TOWNSEND, District Judge.
To the bill herein for infringement of certain patents, defendant has interposed a plea of license to its assignor, as to patent No. 449,943. Said license is as follows:
“License and Agreement.
“Whereas, Louis McCarthy, of Boston, county of Suffolk, state of Massachusetts, is the owner of letters patent of the United States, No. 449,943, dated April 7th, 1891, granted to him for insulator; and whereas, the Gould & Watson Company, a corporation duly organized under the laws of Maine, and having a place of business at said Boston, is desirous of acquiring an exclusive license under said letters patent covering the use of the said invention in connection with trolley wires or guard wires for electric railways: Now, therefore, be it known that I, Louis McCarthy, of Boston, Massachusetts, for and in consideration of the sum of three hundred dollars to me in hand paid, the receipt whereof I do hereby acknowledge, paid by the said the Gould & Watson Company, do hereby give and grant unto the said the Gould & Watson Company the exclusive right and license to manufacture and sell insulators for trolley wires or guard wires for electric railways embodying the invention, or any substantial or material part thereof, set forth in said letters patent No. 449,943, dated April 7th, 1891; said license to continue in force to the full end of the term for which said letters patent are granted. It is understood and agreed that this license is accepted by the said the Gould & Watson Company, subject to the condition that the said Louis McCarthy shall have the right personally to invent or make insulators which are an improvement on the one shown in said letters patent, even if said improvement infringes thereon, without in any way being liable to the said the Gould & Watson Company hereunder. In other words, this license is intended to be limited to the form of said insulators shown in said patent so far as it relates to trolley or guard wires for electric railways, and is not to include Improvements thereon when said improvements are embodied in insulators which are made by the said Louis McCarthy personally, or the firm or corporation by which he is employed, or of which he is a member; but in case the said Louis McCarthy leaves said employ, or ceases to be such member, then said firm or corporation shall cease to be protected by this provision of this license.
“In witness whereof, I have hereunto set my hand and seal, this twenty-first day of September, A. D. 1891. Louis McCarthy. [Seal.]
“In presence of Wm. A. Macleod.”
The complainant assented to the transfer to defendant of said license, and of all of said assignor’s rights thereunder. The insulators manufactured by defendant embody the construction covered by said patent, and certain elements (notably a covering of insulating material) embraced in the other patents in suit. The question of infringement of said other patents is not involved herein. Said insulators are technically known as strain insulators, being so constructed that they both resist heavy strains, and intercept the current from the trolley wire, and prevent its escape to the *412 ground. They are capable of use, and have been used, to a limited! extent, for purposes other than those connected with trolley wires; but defendant has never made, sold, or used them for any purpose other than for use with trolley or guard wires of electric railways.
The sole contention between the parties is whether, under the grant of “the exclusive right and license to manufacture and sell insulators for trolley or guard wires for electric railways, embodying the invention or any substantial or material part thereof,” the defendant has the right to make said insulators. It appears from the model in evidence (a section of the Hartford street-railway system) that defendant, as part of its equipment, uses these insulators in a variety of positions between the trolley and guard wires and their supports. The defendant contends that the insulators are covered by said license, because they are embraced within its terms, according to the plain, natural, and obvious meaning of its language, because their primary function is to intercept the current, and prevent its escape by insulation, and because the term “insulators for trolley wires or guard wires” is a generic term, including various classes of insulators used for such purposes. It appears that, prior to the date of said license, the licensor was’ in the employ of the original licensee; that immediately thereafter he left it, to engage with the complainant company in the manufacture of insulators for electroliers and gaseliers; and that for more than three years thereafter said licensee and this defendant, its assignee, advertised, manufactured, and sold these insulators, with the knowledge of complainant, and without remonstrance on its part. The defendant contends that these facts show an intentional division of the business; that the limitation contended for by complainant would defeat the purposes of the grant; that no concern would buy from defendant one special kind of insulators for trolley wires if it could not also buy from it the other kinds of insulators required for said wires; that the license is to be construed more strongly against the licensor; and that its acquiescence shows its interpretation of said grant in accordance with defendant’s claim. Counsel for complainant contends that the words “insulators for trolley wires or guard wires” are limited to insulators serving to insulate the trolley wire from a span or cross wire or a bracket, and that such insulators were illustrated in certain forms shown in sheet 1 of the patent drawings, and that they were the only insulators known at the date of the said license, to those skilled in the art, as insulators for trolley wires or guard wires. In support of this contention, he cites the following language of said license agreement: “This license is intended to be limited to the form of said insulators shown in said patent so far as it relates to trolley or guard wires for electric railways.”
I have been unable to adopt complainant’s view, for'the following reasons: The license states that the licensee “is desirous of acquiring * * * an exclusive license * * * covering the use of the said invention in connection with trolley wires or guard wires.” Defendant’s assignor was licensed to manufacture and sell such insulators “for electric railways, embodying the invention or *413 ■any 'substantial or material part thereof set forth in said letters patent.” It was a condition thereof that even the licensor might invent infringing improvements without being liable therefor to the licensee. The language above quoted, limiting the license to the form shown in said patent, and the connection in which said limitation is expressed, show that the word “form” was not used in the sense of shape, but obviously in the sense of kind, of insulators, namely, insulators for trolley roads, such as are shown in Figs. 1, 2, and 3, and that the intent of the licensor was to exclude such improvements as the said McCarthy or his firm might thereafter make. This view of the construction of said license is supported by the language of the patent itself, and by Fig. 3 of the drawings. The patentee says:
•‘Fig. 3 is a section showing my invention as embodied in a pull-off insulator for electric railways. * * * At Fig. 3 I have shown a modification of my insulator. The construction is, however, substantially, the same,” etc.
Of another figure the patentee says:
“The size and shape of the parts may he changed * * * to adapt the shape and size of the device to the conditions under which it is to he used.”
But Fig. 3, with the pull-off removed, would be adapted for use, and like those actually used by defendant in the construction shown in the Hartford model, and would be operatively located on the wires, which in said construction horizontally take the strain off the wires.
Much expert testimony has been introduced as to what insulators are included in the term “insulators for trolley wires or guard wires for electric railways.” Defendant’s witnesses claim that it includes “all appliances designed to confine the current in the trolley wire, and prevent this current from charging span wires, pull-off wires, and anchor wires; in fact, all wires which may be used to suspend or hold in position the trolley wire itself. In the case of guard wires, the term is used to designate the appliances used to insulate the guard wires from such suspension wires as run to the poles.” Complainant’s witnesses claim that said term, as used at the date of -the license, was limited in its meaning to insulators from immediate supports of span wire or bracket. But while the five expert witnesses for complainant all testify that said term would be understood to cover such devices, and, in the ordinary use in the trade, do not generally include the defendant’s construction, it is most significant that not one of them testifies either that defendant’s insulators are not in fact “insulators for trolley wires or guard wires,” or that they are necessarily excluded, by their construction or use, from said class of insulators, or were so excluded in 1891, the date of said license.
Defendant’s experts testify that the insulating system shown by the Hartford model is typical of the method usually employed in this country at the time when said license was given. The term “insulators for trolley wires and guard wires” is not found in the patent. Defendant’s insulators are used for such wires only. I think the licensor chose said term in order thus to embrace all such insulators embodying the patented invention as were to be used *414 to prevent current from escaping from sucli trolley and guard wires. This construction accords with the plain, obvious meaning of the language used, is the only one which gives effect to the whole contract and makes the license of practical value, is in accordance with the apparent understanding and intent of both parties and with their practical interpretation of the license, and will therefore be adopted by the court. It is not claimed that defendant has used any “improvements thereon, when said improvements are embodied in insulators which are made by the said Louis McCarthy personally, or the firm or corporation by which he is employed or' of which he is a member.” The plea is sustained.